[No. 6,150.]
# THE PEOPLE *v.* HOUSTON.

ASSESSMENT—LEGISLATIVE POWERS—CONSTITUTIONAL LAW.—By a special act in relation to a swamp land reclamation district, the Trustees were required to make up a sworn statement of the cost of the reclamation work, *"based upon the books and vouchers thereof,"* and the amount so reported was to be assessed upon the lands. *Held,* that this was a levy by the Legislature of an assessment upon the lands of the district, and that the act was unconstitutional.

APPEAL from a judgment for defendant, in the Fifteenth District Court, County of Contra Costa.

*Philip G. Galpin, T. A. Brown,* and *L. B. Mizner,* for Appellants.

The power to levy assessments to pay the expenses of local improvements is a branch of the taxing power. (39 Cal. 389; 28 Cal. 362.) Even had the Legislature fixed the amount to be raised by the assessment, it would have had the power. (*Shaw* v. *Dennis,* 5 Gilm. 418; *Guilford* v. *Supervisors,* 13 N. Y. 143; *Thomas* v. *Leland,* 24 Wend. 65.)

*James A. Waymire,* for Respondent.

The act is unconstitutional. (*People* v. *Lynch,* 51 Cal. 34; *Taylor* v. *Palmer,* 31 Id. 252; Const. Cal. art. 3; Cooley Const. Lim. §§ 87–114.)

Department No. 1, Ross, J.:

Action commenced October 20th, 1876, in the name of the People of the State of California, to collect an alleged delinquent assessment upon certain lands situated within Swamp Land Reclamation District No. 118, levied under and pursuant to an act of the Legislature passed March 6th, 1876, entitled "An Act relative to the Assessment in Swamp Land Reclamation District number one hundred and eighteen, in Contra Costa County." The district was organized under the Act of March 28th, 1868. The Court below sustained a demurrer to the com-

plaint, and the plaintiff declining to amend, final judgment was entered for defendants, from which this appeal is taken.

The principal question in the case relates to the validity of the said Act of March 6th, 1876, the first section of which is as follows : " The Trustees of Reclamation District No. 118 are hereby authorized and directed to make up a sworn statement, in detail, of the total cost and incidental expenses of the work of reclamation in the said district, *based upon the books and vouchers thereof,* and to *report* the same to the Board of Supervisors of Contra Costa County ; and, thereupon, the said Board must appoint three Commissioners, disinterested persons, residents of said county, who must proceed forthwith to view and assess on the lands of said district, *the whole amount so reported,* in proportion to the benefits which have resulted, or will result thereto, from said work and incidental expenses."

Section 2 provides that " a list of the charges assessed against each tract of land must be made out and filed by the Commissioners, and shall be a lien on said land, and become delinquent and be collected and disbursed in the manner provided in art. 11, chap. 1, title 8, part 3, of the Political Code." And by § 3 it is provided that " the assessment to be levied under the provisions of this act shall supersede all former assessments levied in said district," etc.

The general law in existence at the time of and since the passage of this act—and which, so far as the questions in this case are concerned, is substantially the same as the Act of March 28th, 1868—provides, that after the approval by the Board of Supervisors of the petition for the formation of the district, the petitioners, or a majority of them, " may make by-laws for the management of the district, and must elect three persons, owning land in the district, to act as a Board of Trustees thereof, who shall keep their office in the district, or as near as practicable, for the transaction of all business pertaining to the reclamation of the district, and their books and papers shall be open to inspection, by any one person interested, at all times." (Pol. Code, § 3452.) By § 3454, the Board of Trustees are given power " to employ engineers to survey, plan, locate, and estimate the cost of the work necessary for reclamation," etc.

And § 3455 provides that they "must report to the Board of Supervisors of the county * * * the plans of the work and estimates of the cost, together with estimates of the incidental expenses of superintendence, repairs," etc. The next section (3456) makes it the duty of the Board of Supervisors to appoint three Commissioners, "who must view and assess upon the lands situated within the district a charge proportionate to the whole expense and to the benefits which will result from such works." The Commissioners are then required to make a list containing: 1st, a description of each tract assessed; 2nd, the number of acres in each tract; 3rd, the name of the owner of each tract, if known, and if unknown that fact; and 4th, the amount of the charge assessed against each tract. (§ 3461.) The list so made must be filed with the County Treasurer, and from and after it is filed, the charges assessed become a lien upon the land. (§ 3461–2.) And if the assessments are not paid within thirty days, the District Attorney is required to commence suit to enforce payment, and when collected he must pay the money to the County Treasurer, who must place the same to the credit of the district. (§ 3466.)

Under these general provisions of the law, the land-owners are permitted to organize a district for the purpose of securing the reclamation of the land situated within its limits. They are required to select three Trustees from their number, whose duty it is to plan the necessary works, to estimate the cost, and to report to the Board of Supervisors the amount of money required for the purpose. Upon the result of their investigation and judgment the assessment is based. They are selected, or should be, with special reference to their fitness to discharge this important duty, and those who have to pay for the work are entitled to the benefit of the investigation and discretion of the Trustees, to the end that the plans suggested may be the best, and the cost of the work reasonable and proper. When all of the steps thus required by the statute have been taken, the amount assessed upon the respective tracts becomes a lien thereon, and not until then. The act in question, however, attempts to deprive the property-owners of all the benefits conferred by the law under which the district was organized and

the Trustees elected, and in terms directs the latter to make up a sworn statement of the total cost and incidental expenses of the work of reclamation in the district, *based upon the books and vouchers thereof*, and to report the amount to the Board of Supervisors, and further declares that the Board must thereupon appoint three Commissioners, who must proceed forthwith to view and assess on the lands of the district *the whole amount so reported*, in proportion to the benefits, etc.

According to this act, the amount assessed must be the amount the Trustees are required to report, and this amount they are required to ascertain by making a statement of the total cost and incidental expenses of the work, *based upon the books and vouchers* of the district. In other words, the books and vouchers are by the act declared to be the foundation of the statement— that upon which it must rest. To ascertain the total amount from such a basis would require a mere mathematical calculation, calling for and admitting of no question as to the *correctness* of the books or vouchers, or of the charges contained in them, and would take from the Trustees all discretion in the premises.

It is, in effect, nothing more nor less than an attempt by the Legislature to levy an assessment upon the lands of the district —the amount being the sum total shown by the books and vouchers, without any reference to the nature or character of the charges in the books, and irrespective of any question as to whether the law authorizing and providing for the work has been complied with.

The Constitution admitted of no such legislation. (*People* v. *Lynch*, 51 Cal. 34; *Brady* v. *King*, 53 Id. 44; *Taylor* v. *Palmer*, 31 Id. 252.)

Indeed, it is not claimed that the provisions of the general law were in any respect complied with, but the action is based entirely upon the Act of March 6th, 1876.

Other objections are made to this act, but we deem it unnecessary to notice them, as the view already taken disposes of the case.

Judgment affirmed.

McKINSTRY, J., and McKEE, J., concurred.